IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR SHEIKH

    Plaintiff,

    v.                           Civil Action No.

                                      Hon.

FEDERATED CAPITAL CORPORATION/
FEDERAL RAILWAYS INC.
    Defendant.

---

## COMPLAINT

Plaintiff OMAR SHEIKH, by and through his attorneys, Carla D. Aikens, P.C., submits the following Complaint against Defendant FEDERATED CAPITAL CORPORATION/ FEDERAL RAILWAYS INC.

## JURY DEMAND

COMES NOW Plaintiff and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this action, Plaintiff was a resident of the City of Fraser, County of Macomb, State of Michigan.

2. Defendant FEDERATED CAPITAL CORPORATION/ FEDERAL RAILWAYS INC. ("FCC") is a Michigan corporation that does business at the following location: 30955 Northwestern Hwy Farmington Hills, Michigan 48334.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant

1

to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff began his employment with FCC as a Post Judgment Collector in January of 2012.

7. Over the course of his employment, Plaintiff was the only Muslim employee of apparent Middle Eastern descent.

8. Plaintiff was successful as a collector.

9. After approximately six months at FCC, he was tasked with pursuing pre-judgment collections in addition to post-judgment collections.

10. Unfortunately, Plaintiff began to experience discrimination almost immediately.

11. Despite his success as a collector, Plaintiff's pre-judgment case load was significantly reduced.

12. He was told by his supervisor, Patrick David that he was "doing too well" and that his success had to be "spread around."

13. During Plaintiff's employment, he never saw or heard of another employee being subjected to punishment for "overachieving."

14. Plaintiff followed company protocol by first notifying his immediate supervisor, Patrick

David, of his complaints.

15. Unfortunately, because Mr. David's conduct was central to Plaintiff's complaints, directing his complaints to Mr. David increased rather than decreased the level of harassment Plaintiff experienced.

16. As a result of the increased harassment, Plaintiff reported Mr. David to the Human Resources Manager, Ellen Papow.

17. Plaintiff informed FCC Management via Ms. Papow of the following acts of discrimination and harassment by Mr. David:

   a. Mr. David attempted to provoke Plaintiff regarding his religion by purposely mocking and mispronouncing Muslim names;

   b. Mr. David sent Plaintiff religiously offensive text messages including one with a picture of a mosque with the words "Death to Americans;"

   c. Mr. David changed Plaintiff's employment terms to disallow him from having paid time off on Muslim holidays;

   d. Mr. David remarked that Plaintiff's son " look[ed] like a terrorist;"

   e. Mr. David conspired with Plaintiff's co-workers to obstruct him from completing his assignments by instructing/allowing the administrative support staff to neglect their portion of his assignments which made those assignments nearly impossible to complete;

   f. Mr. David participated in conversations over instant messenger that were derogatory in nature and directed at Plaintiff;

   g. Mr. David purposely failed to publicly recognize Plaintiff's professional accomplishments on a leaderboard posted for public viewing by other employees

and members of management; and

h.  Mr. David arranged for Plaintiff's desk to be moved next to his after Plaintiff began complaining about Mr. David's conduct, essentially demonstrating, to Plaintiff, that he could not escape harassment by Mr. David no matter what he did.

18. Plaintiff's complaints regarding Mr. David's conduct appear to have been wholly disregarded and undocumented.

19. Ms. Papow instructed Plaintiff to stop making complaints.  Specifically, Ms. Papow stated that Plaintiff's complaints were "driving her crazy" and that he should only come to her if an issue was "life threatening."

20. After following up on his complaint with management, thereafter, Plaintiff received his first reprimand on January 23, 2015, after almost two years of working for FCC without incident.

21. Plaintiff noticed a pattern wherein he would complain about Mr. David's conduct and a corresponding complaint about his temperament would be lodged against him by an unnamed employee.

22. Each of the purported "write ups" about Plaintiff referred to subjective personality issues as reported by other employees who were never identified and contained no corresponding statements from individuals who purportedly witnessed Plaintiff's alleged conduct.

23. Although Plaintiff denied responsibility for the alleged temperament issues, there was no attempt by FCC to investigate the allegations to determine the veracity of the supposed complaints.

24. In every instance, without regard to Plaintiff's success at his job and the fact that no customer complained about Plaintiff, the unsupported statements of unidentified individuals was adopted wholesale.

25. On the morning of his termination, Plaintiff notified Ms. Papow, in an email on the company server, that he believed Mr. David's conduct had engendered a "hostile work environment."

26. Ms. Papow responded to the email by setting up a meeting with Plaintiff.

27. When Plaintiff arrived at the meeting, Ms. Papow was meeting with Mr. David.

28. When Plaintiff expressed discomfort over Mr. David being present in the meeting, Ms. Papow dismissed his concerns and refused to proceed unless Mr. David was present.

29. Ms. Papow expressed a vague belief that things had "gotten out of hand" and asked Plaintiff how he would like to proceed.

30. Plaintiff volunteered to work from home and even offered to take a pay cut. Ms. Papow responded that Plaintiff could either take a voluntary layoff or be fired.

31. Plaintiff was terminated thereafter.

32. No explanation was given for the termination.

33. Plaintiff was not told that he was being terminated for insubordination nor that his termination was related to his previous write ups.

34. The issues referenced in the purported write-ups were not the subject of the termination meeting.

35. After being terminated, Plaintiff filed a complaint for discrimination with the Detroit office of the Equal Employment Opportunity Commission ("EEOC").

36. Ultimately, the EEOC was unable to establish whether Defendant violated or complied

with Title VII.

37. The EEOC issued a Notice of Suit Rights, dated September 15, 2016.  **Exhibit A – Right to Sue Letter**.

## COUNT I

## TITLE VII - RETALIATORY HARASSMENT

38. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

39. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

40. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or retaliate against an employee because he or she for engaged in protected activity.

41. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

42. Plaintiff engaged in protected activity when he took the following actions including, but not limited to, complaining about the discrimination he experienced on the job due to his race, national origin and religion.

43. Defendant FCC had knowledge that Plaintiff engaged in protected behavior, because he addressed his complaints to his immediate supervisor Mr. David and the FCC Human Resources Department.

44. After engaging in the protected activity, Defendant thereafter harassed Plaintiff and took several adverse employment actions against Plaintiff, as alleged in the statement of facts and herein, subjecting Plaintiff  to severe or pervasive retaliatory harassment by a

supervisor including, but not limited to:

    a. changing the terms of Plaintiff's employment by denying Plaintiff the right to observe religious holidays although the ability to do so had been a term of his employment;

    b. insulting Plaintiff based on his race, national origin and religion, and disciplining Plaintiff based on unfounded allegations; and

    c. suspending and subsequently terminating Plaintiff because he engaged in protected activity , namely complaining about the discrimination he experienced on the job due to his race, national origin and religion.

45. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

46. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

47. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

48. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

49. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**

**TITLE VII – HARASSMENT-RACE**

50. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

51. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

7

52. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass an employee because of their race.

53. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

54. Plaintiff is a member of a protected class. Specifically with respect to this Count, Plaintiff is of Middle Eastern descent.

55. Plaintiff was, subjected to severe or pervasive harassment, as alleged above and in the statement of facts, because of his race.

56. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

57. Plaintiff notified Defendant of the unwelcomed conduct or communication, and Defendant failed to remedy the unwelcomed conduct or communication.

58. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

59. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

60. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

## TITLE VII - HARASSMENT-NATIONAL ORIGIN

61. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

62. At all material times, Defendant was an employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

63. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass an employee because of their national origin.

64. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

65. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is Muslim and of Middle Eastern descent.

66. Plaintiff was, subjected to severe or pervasive harassment, as alleged above and in the statement of facts, because of his national origin.

67. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

68. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

69. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

70. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

71. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT IV**

**TITLE VII - HARASSMENT-RELIGION**

72. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

73. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

74. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass an employee because of their religion.

75. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

76. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is Muslim.

77. Plaintiff was, subjected to severe or pervasive harassment, as alleged above and in the statement of facts, because of his religion.

78. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

79. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

80. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

81. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

82. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V

## TITLE VII - DISCRIMINATION-RACE

83. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

84. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

10

85. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to discriminate against an employee because of their race.

86. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is of Middle Eastern descent.

87. Plaintiff's race was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff as alleged in the statement of facts and herein, including, but not limited to:

    a. decreasing Plaintiff's pre-judgement caseload even though he was successful at the job;

    b. disciplining Plaintiff based on unfounded allegations;

    c. suspending Plaintiff; and

    d. terminating Plaintiff.

88. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

89. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of race.

90. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

91. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI

## TITLE VII - DISCRIMINATION-NATIONAL ORIGIN

92. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

93. At all material times, Defendant was an employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

94. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to discriminate against an employee because of their national origin.

95. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is Muslim and of Middle Eastern descent.

96. Plaintiff's national origin was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff, including but not limited to the following:

   a. decreasing Plaintiff's pre-judgement caseload even though he was successful at the job;

   b. disciplining Plaintiff based on unfounded allegations;

   c. suspending Plaintiff; and

   d. terminating Plaintiff.

97. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

98. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of national origin.

99. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff

has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

100. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII

## TITLE VII - DISCRIMINATION-RELIGION

101. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

102. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

103. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to discriminate against an employee because of their religion.

104. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is Muslim and of Middle Eastern descent.

105. Plaintiff's religion was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff as alleged above and in the statement of facts.

106. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

107. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of religion.

108. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

109. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII

## ELCRA - DISCRIMINATION-RACE

110. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

111. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

112. Defendant's conduct as herein alleged violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to discriminate against an employee because of their race.

113. Plaintiff is a member of a protected class. Specifically with respect to this count, Plaintiff is of Middle Eastern descent.

114. Plaintiff's race was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff, as alleged in the statement of facts and herein, including, but not limited to:

    e. decreasing Plaintiff's pre-judgement caseload even though he was successful at the job,

    f. disciplining Plaintiff based on unfounded allegations,

    g. suspending Plaintiff and

    h. terminating Plaintiff.

115. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of race.

116. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

14

117.  As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

118.  Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT-IX

## ELCRA - DISCRIMINATION-NATIONAL ORIGIN

119.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

120.  At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

121. Defendant's conduct as herein alleged violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to discriminate against an employee because of their national origin.

122.  Plaintiff is a member of a protected class. Plaintiff is Muslim and of Middle Eastern descent.

123.  Plaintiff's national origin was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff as alleged above and in the statement of facts.

124.  Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of national origin.

125. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

126. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

127. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT X

## ELCRA - DISCRIMINATION-RELIGION

128. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

129. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

130. Defendant's conduct as herein alleged violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to discriminate against an employee because of their religion.

131. Plaintiff is a member of a protected class. Plaintiff is Muslim and of Middle Eastern descent.

132. Plaintiff's religion was a factor in Defendant's decision to take a number of adverse employment actions against Plaintiff as alleged above and in the statement of facts.

133. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

134. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on unlawful consideration of religion.

135. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

136. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XI

## ELCRA - HARASSMENT-RACE

137. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

138. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

139. Defendant's conduct, as alleged herein, violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to harass an employee because of their race.

140. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

141. Plaintiff is a member of a protected class. Plaintiff is Muslim and of Middle Eastern descent.

142. Plaintiff was subjected to communication or conduct on the basis of his race as alleged above and in the statement of facts.

143. The communication and conduct was unwelcomed.

144. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

145. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

146. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

147. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XII

## ELCRA - HARASSMENT-NATIONAL ORIGIN

148. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

149. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

150. Defendant's conduct, as alleged herein, violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to harass an employee because of their national origin.

151. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

152. Plaintiff is a member of a protected class. Plaintiff is Muslim and of Middle Eastern descent.

153. Plaintiff was subjected to communication or conduct on the basis of his national origin as alleged above and in the statement of facts.

154.  The communication and conduct was unwelcomed.

155. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

156. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

157. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

158. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT XII

### ELCRA - HARASSMENT-RELIGION

159. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

160. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

161. Defendant's conduct, as alleged herein, violated Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to harass an employee because of their national origin.

162. A respondeat superior relationship existed because Mr. David had the ability to undertake or recommend tangible decisions affecting the employee or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

163. Plaintiff is a member of a protected class. Plaintiff is Muslim and of Middle Eastern descent.

164. Plaintiff was subjected to communication or conduct on the basis of his national origin as alleged above and in the statement of facts.

165. The communication and conduct was unwelcomed.

166. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

167. Plaintiff notified Defendant of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

168. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

20

169. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XIII

## ELCRA - RETALIATION-PROTECTED ACTIVITY

170. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

171. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan, Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.

172. Defendant's conduct, as alleged herein, violated Michigan Elliott-Larsen Civil Rights Act MCL 37.2101 et seq., which makes it unlawful to retaliate against an employee because he or she has engaged in protected activity.

173. Plaintiff engaged in protected activity when he took the following actions, including, but not limited to, complaining about the discrimination he experienced on the job due to his race, national origin and religion.

174. Defendant had knowledge that Plaintiff engaged in protected behavior, because he addressed his complaints to his immediate supervisor, Mr. David, and to Defendant's Human Resources Department.

175. After Plaintiff engaged in protected activity, Defendant thereafter took several adverse employment actions against Plaintiff, because of that activity, as alleged in Count I and the statement of facts, including, but not limited to: unfounded write-ups, suspension and termination.

176. As direct and proximate result of Defendant's unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of

reputation and esteem in the community; mental and emotional distress; and loss of the ordinary pleasures of life.

177.    Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF REQUESTS that this Court enter judgment against Defendant as follows:

1.  Compensatory damages in whatever amount above $25,000 to which Plaintiff is entitled;

2.  Exemplary damages in whatever amount above $25,000 which Plaintiff is entitled;

3.  An award of lost wages and the value of fringe benefits, past and future;

4.  An award of interest, costs, and reasonable attorney fees; and

5.  An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  December 14, 2016

Respectfully Submitted
by:

CARLA D. AIKENS, P.C.
*/s/ Carla D. Aikens*
Carla D. Aikens (P69530)
Attorneys for Plaintiff
615 Griswold Street, Suite 709
Detroit, MI 48226
(844) 835-2993
Carla@aikenslawfirm.com